Judge Green.
The contract upon which these actions were founded, was entered into- on the 26th day of April, 1804, between Joseph Lewis, Ferdinando Fairfax and Philip Fitzhugh; by which it was stipulated between Lewis and Fitzhugh, that Lewis sold to Fitzhugh his Clifton estate, subject to a mortgage for JB 4,000, for which Fitzhugh was to pay by assigning to Lewis an obligationof Richard 11. Lee for $5,000, and the balance of $8,333 33 cts. out of a tract of 19,200 acres of Kentucky land ; for the conveyance of -which in due form when required, Fitzhugh held the obligation of Thomas Lang, and which land Fitzhugh thereby warranted to be clear of all taxes and public dues ; the land to be rated at two dollars per acre. Then Lewis stipulated to procure an assignment to Fairfax or to whom he might direct, of a mortgage from Bull to Turnbull, estimated at about $ 8,000, and to assign or procure to said Fairfax the said obligation of Richard B. Lee for $ 5,000 ; and likewise to procure a proper conveyance of the said part of said Green River land, to the amount of $ 8,333 33 cts. at two dollars per acre, to said Fairfax from said Lang: the whole property so to be transferred to Fairfax by Lewis, put at $21,333 33 cts. subject to correction. For which Lewis agreed to receive, and the said Fairfax to make payment as follows :—by conveying to Lewis, with general warranty, his reversionary interest in the Piedmont tract of land, estimated to be about 2,500 acres, but to be ascertained by surveys already-made by Harding at $8 per acre, say to the amount of $ 20,033 33 cts. and the balance, say $ 1,300, in other lands on the Blue Ridge or Short Hills, or in.the Valley between, at his usual selling prices, not exceeding $ 10 per acre, as soon as conveniently could be done ; and if the said, agreement should take effect, Fitzhugh engaged to procure from Lang to Fairfax, a conveyance of the whole of the said Kentucky land, according to Lang’s obligation to convey the same, and to receive in payment certain property specified in the agreement, This agreement was to be bind *32 ing on the parties, whenever Fitzhugh should determine to tajce Clifton, which he had an option to take or refuse, after he should inspect it, without delay. On the 3d of May, 1824, Fitzhugh, by endorsement on the agreement, rectified it; and on the next day, (the 4th of May, 1804,) Lewis and Fairfax entered into a supplemental contract, endorsed on the original agreement, to the following effect: that, for the purpose of ascertaining finally the quantity of the Piedmont tract of land that day conveyed to Lewis by Fair-fax for the estimated quantity of 2,361-2 acres, an immediate survey should be made, and that when ascertained, the deficiency or excess of the real quantity, compared with the estimated quantity, should be accounted for at jé 8 per acre : that Fairfax should cause to be immediately conveyed to Lewis by Harding a tract of land belonging to Harding, (said to contain 158 acres) by actual survey, at #16 per acre ; to be paid for by Lewis, first in the deficiency of the Piedmont tract of land, according to the within contract, when the amount of Bull’s mortgage, which was then received atnot less than #6,000 with interest from Januaryj 1st, 1801, was fixed by the decree of the Chancellor, (it appears by the contract, that a bill to foreclose the mortgage was then depending,) and the balance in some property convenient to the parties. Upon these contracts Lewis and Fairfax mutually instituted actions, each against the other. In that of Lewis v. Fairfax, the only breach assigned was, that Fairfax had failed to procure Harding to convey to Lewis the 158 acres of land mentioned in the supplemental contract.
The defendant pleaded “ covenants performed,” and that he had always been ready to procure the conveyance from Harding to Lewis, but that the plaintiff had never demanded it. Upon the first plea, the plaintiff took issue, and demurred generally to the second. The issue was found for the plaintiff; the demurrer sustained, and judgment given on the verdict, for the plaintiff.
*33 The appellant objects, that the covenant alledged by Lewis to be broken by him, was dependant upon the performance by Lewis of his covenants, contained in the original agreement, and that the performance of those covenants should have been averred; that the deficiency, appearing upon a.11 actual survey in the quantity of the Piedmont land, should also have been averred ; and that the plaintiff should have averred, that he prepared and tendered a deed for, and demanded a conveyance of Harding’s land ; and, that without such averments in the declaration, the plaintiff’s action could not be maintained.
The property stipulated to be transferred by Lewis to Fairfax, was estimated at $81,333 33 cts. subject to correction. There was no uncertainty as to the value of any part of this property, except as to Bull’s mortgage, which depended upon the event of the suit for foreclosure, then depending. The quantity of the Piedmont land, which Lewis was to take in payment, at $ 8 per acre, was also uncertain. It was estimated at about 2,500 acres. But it was by the original contract, to be ascertained by surveys already made, but not in the possession of the parties. I think the legal effect of the original contract was, that when the quantity and value of these subjects respectively, then uncertain, should be ascertained, Fairfax was to make good the amount of Lee’s bond, the Kentucky land and Bull’s mortgage, as it might turn out to be more or less, in other jands on the Blue Ridge or Short Hills, or in the Valley between them. It appears from the supplemental contract, that the Piedmont land was then ascertained, probably in the mode prescribed by the original contract, to contain only 2,3611 acres, falling short of the estimated quantity by 1381 acres ; and Harding’s land seems tó have been substituted for the land originally in contemplation of the parties, on the Blue Ridge or Short Hills, or in the Valley between them. And it was then agreed, that a survey of the Piedmont land should be made, with a view to ascertain its actual deficiency ; and when the amount of Bull’s mortgage *34 should be ascertained by a decree, and the survey made, ^ vajue 0f qle property according to the stipulated prices in the agreement, received of Lewis according to the original agreement, should be compared with the real value of the Piedmont and Harding’s land, at the stipulated prices, and the difference paid in some property convenient to the parties. This was obviously the intent of the parties, deduced from the terms of the contracts ; and if so, the stipulation in relation to the conveyance of Harding’s land, was an independent covenant. Harding’s land was to be conveyed immediately. The expected decree could not be rendered for some time, and no matter what was the amount of the decree, or the quantity of land ascertained by the survey, Fairfax was bound to procure the conveyance of the land. If the land had turned out to be 3,000 acres, and the mortgage nothing, still Fairfax was bound to procure the conveyance, and seek a compensation, under the provision that the difference should be paid in property convenient to the parties. He could not compensate himself by withholding the property which he had stipulated to procure a conveyance for immediately. For the same reasons, a survey of the Piedmont lands was not a precedent condition. . That was to be made only for the purpose of ascertaining what difference was to be paid in property by Lewis after he had received a conveyance of Harding’s land, and the amount of Bull’s mortgage was ascertained.
It is true that the performance of Lewis’s stipulations with Fairfax, by the terms of the original agreement, was a condition precedent to the performance of Fairfax’s stipulations with Lewis, in the same agreement. Fairfax stipulates to pay for the property to be transferred to him by Lewis in the manner specified ; and until the property was transferred, he was not bound to pay for it by the contract. But although, by the supplemental agreement, Harding’s land was substituted for the land on tire Blue Ridge or Short Hills, or the Valley between, yet it was substituted with this difference; that by the original contract, Fairfax was not *35 bound to convoy the lands which he stipulated to convey to Lewis, until the latter had performed his covenants ; by the supplemental contract, he was bound to procure a conveyanee of Harding’s land, immediately and unconditionally, without regard to the performance by Lewis of his covenants. There is a general averment in the declaration, that Lewis had performed all his covenants contained in the original and supplemental agreements. As no averment of performance on his part was necessary, there is no occasion to enquire here, whether this general averment would be sufficient as to the conveyance of the Kentucky land, if any averment as to that were necessary.
If it be true, that a party who covenants to convey or procure a conveyance of land, without any limitation of time, has his life-time to perform his covenant, unless hastened by request; that doctrine does not apply to this case, in which the covenant is to procure the conveyance immediately. This expression limits the time to the shortest possible period within which the conveyance could be conveniently procured, and has the same effect, as if the covenant had been to procure the conveyance upon request, • and the request had been made immediately upon the execution of the covenant. The demurrer was, therefore, properly sustained. Nor do I think that it was necessary to aver in the declaration, that a deed was prepared and tendered by the plaintiff. ■ Upon the principles of the common law, any one undertaking to do an act or cause it to be done, is bound to do it or cause it to be done at his peril, and to find the means of doing it, unless it cannot possibly be done, without the active concurrence of the party with whom the contract is made. In England it seems to be doubtful, whether, in case of a contract to convey, it is not necessary that the purchaser should prepare the conveyance and tender it for execution, whether the contract provides that it shall be made at his expense or not. But if it be neeessary, it is an exception to the general rule of law, and founded upon the practice of the profession in *36 that Country as to Conveyancing. No such practice pre= yails here, and there is no reason with us, why the general rule of law aforesaid should not prevail. I think therefore, that the judgment in the action brought by Lewis v. Fairfax, ought to be affirmed.
In the action of Fairfax v. Lewis, the declaration avers, in general terms, that the plaintiff had performed all the covenants on his part to be performed, as far as they regarded the defendant, and particularly, that he had conveyed the Piedmont lands, and assigns for breaches of the covenants, by the defendant; 1, that he had altogether failed to assign Bull’s mortgage, and altogether failed to establish the said claim to amount to $ 8,000, or even $7,200, and that in fact it amounted only to $7,192 ; 2, that he had failed to assign Lee’s bond; and, 3, that he had failed to procure a proper conveyance of the said part of the Kentucky land, to the value of $ 8,333 33 cents, at $ 2 per acre; and that Lang had not, at the time of the execution of the agreement, or ever after, a good, sure, perfect, and indefeasible title in fee to the land, whereby he could convey to the plaintiff, the said .part of said land. To this declaration the defendant pleaded, that he had well and truly done and performed, on his part, all and each of the covenants in the said covenant contained, which, according to the true intent and meaning thereof, he was bound to perform. To which the plaintiff replied generally; and upon the trial of the issue, the plaintiff demurred to the evidence, and one of the jurors was withr drawn, with the assent of the parties; The defendant ob^ jected to join in the demurrer, but upon the condition, that the demurrer should be subject also to the opinion of the Court, whether, upon the pleadings and issue, the plaintiff was bound to prove a performance of, or an offer to perform, on his part, the covenants for the conveyance of Woodland, on the Blue Ridge, or Short Hills, or leased land in the Valley; and for the conveyance of the lot of Stephen Donaldson, and for the conveyahce of Harding’s *37 land ; as to all which the plaintiff offered no evidence. It appears from the evidence demurred to, that Lewis had procured the assignment of Bull’s mortgage : that the mortgaged property had been sold under a decree of foreclosure ; and that Fairfax had received the proceeds of the sale ; and that Lewis had assigned to Fairfax Lee’s bond. It moreover appears, that on the2lst of June, 1804, Fitzhugh had executed a receipt to Fairfax, in which it was stated, that the former had given an order to the latter on Lang, to convey the Kentucky land. That order is given in evidence, and is in the shape of a letter from Fitzhugh to Lang, dated on the same day with the receipt, informing Lang that his deed to Fitzhugh, for the Kentucky land, was deemed by Fairfax (to whom he had sold the land,} insufficient, and requesting him to deed to Fairfax, the property, referring to the bounds of the original patent, by a deed to which Mrs. Lang shall be a party, and her examination taken and certified, as the laws of Kentucky require ; the deed to contain a covenant for further assurance ; and that the land is free from all incumbrances whatsoever, and a special warranty of 19,200 acres, within the bounds of the original patent. In consequence of this order, Lang and wife executed a deed to Fairfax, for the Kentucky land, the particular terms of which do not appear. But, it appears, that it was not a deed with general warranty. Mrs. Lang’s privy examination was taken under a commission from the Clerk’s office of the Court of Botetourt county, in Virginia, where Lang resided. This deed was delivered to the agent of Fairfax, who enclosed it to Fairfax, in a letter which Fairfax received. He informed his agent, that he was dissatisfied with the deed, as it was not such as his contract entitled him to. But, it, does not appear that he ever returned the deed to Lang, or gave notice of his dissatisfaction with it to Lang, Lewis, or Fitzhugh. Upon this demurrer, the Court gave judgment for the defendant, and the plaintiff appealed.
*38 The view already taken of the contract, shews, that the performance by Lewis of the covenant on his part, in the original agreement, was a condition precedent to the performalice of Fairfax’s covenants in the same agreement; and that the conveyance by Fairfax of Harding’s land, stipulated for in the supplemental agreement, was wholly independent of all other covenants in the contract, on both sides. It was therefore unnecessary for the plaintiff to aver or prove the performance of any covenant on his part. But, if it were otherwise, the plaintiff having averred and proved the performance of the most important stipulation on his part, and the defendant having accepted the conveyance of the Piedmont lands, the latter could not resist the execution of the covenants on his part, because Fairfax had failed, in part, in the performance of his. Otherwise, he would have held the property conveyed to him, without responsibility to pay for it in any way. The failure of one party to perform his covenants, can in no case excuse the other party from performing his, unless such failure goes to the whole consideration.
There can be no question, that Lewis had performed all his covenants alledged to be broken, except as to the conveyance of the Kentucky lands. He had assigned Lee’s debt and Bull’s mortgage. There was no warranty of the amount of Bull’s debt; but if there was, it appears from the decree, that, on tbé day of the contract, it was equal to the estimated value, viz: $ 8,000. The only real question, therefore, in the cause, is as to the Kentucky land.
By the terms of the covenant, Lewis was bound to procure a proper conveyance of Kentucky land (part of a specified tract,) from Lang to Fairfax, to the value of $8,383 33 cents, at $ 2 per acre. This was, substantially, a covenant to procure a good title ; for, if Lang had no title, his deed could pass nothing, and could not, therefore, be called a conveyance. And, in like manner, if his title was in any degree imperfect or incumbered, his conveyance would *39 be, to that degree, imperfect and unavailing to the grantee. Did the covenant on the part of Fitzhugh to procure a conveyance of the whole, merge or destroy the engagement of Lewis, to procure a conveyance of a part ? I think not. We'are bound so to construe every contract, that every word shall, if possible, have its effect. If the parties had intended that Fitzhugh’s engagement should annihilate that of Lewis, they would have said so expressly, or have omitted Lewis’s covenant altogether. They must have intended, that Lewis’s covenant should hind him in some way, and we are bound to construe it accordingly, unless there were such a total incompatibility between the covenants of Fitzhugh and Lewis, as that the one must, of necessity, destroy the other. I see no such incompatibility between the two covenants. I see no absurdity, in one man’s being bound for all, and another for part. If it had been found that Fairfax could not perform his contract with Fitzhugh, they might well have vacated their contract, and left that between Lewis and Fairfax in full forcé. Fairfax paid Lewis for a part, and Fitzhugh for the residue, of the land. Fitzhugh was, therefore, hound for part to Lewis, and' for the residue to Fairfax; and Lewis was hound to Fairfax for the same part. There was no reason then, that Fitzhugh should not engage to procure a conveyance' for all to Fairfax, partly on his account, and partly on account of Lewis. But, Fairfax might well desire to hold Lewis bound, notwithstanding Fitzhugh’s engagement, and the parties have modelled their contract accordingly.
If Fitzhugh had procured a conveyance according to his contract, it would have discharged Lewis from all res- . ponsibility. But, would such act of Fitzhugh have discharged Lewis, because it excused Lewis from the performance of his covenant, by making it impossible for him to procure a conveyance of a part, in consequence of Lang’s having already conveyed a complete title to the whole, or because such an act by Fitzhugh would have been a strict' *40 performance of Lewis’s covenant, by himself, or by his procurement ?' It seems that the case turns upon this point. Lewis pleads that he has performed all the eovenants, which, according to the true meaning of the contract, he was bound to perform. Perhaps he ought to have stated, in his plea, how he had performed. This, however, does not enter into the enquiry, whether the evidence supports the issue. The plaintiff having taken issue on the plea, cannot object to any evidence which substantially supports the plea, because the plea is defective. If it really be so defective as not to be a bar to the plaintiff’s demand, he should have demurred to it, or, after the issue was found for the defendant, have moved for a repfeader. This plea can only be supported by evidence which shews, that Lewis had performed his covenant, and not by evidence shewing that his non-performance was excused by the act of the plaintiff or any other; or otherwise, the plaintiff would be surprised upon the trial.
I think that the evidence on the part of Lewis, that Fitzhugh had procured from Lang a proper conveyance for the whole of the land to Fairfax, was proof that Lewis had, in strictness, performed his covenant. His stipulation was not to convey, but to procure a conveyance, for ■a part of the land. Lewis, by means of his contract with Fitzhugh, procured him to undertake to procure, a conveyance from Lang. Without this procurement on the part of Lewis, Fitzhugh would not have undertaken to procure Lang’s conveyance to Fairfax, for that part of the land which he had sold to Lewis. The latter then procured Fitzhugh, to procure from Lang the conveyance to Fairfax, of so much of the land as Fitzhugh had sold to Lewis, and he to Fairfax, and qui facit per alium facit per se. To that extent, Fitzhugh acted for and on behalf of Lewis ; and although in doing so he was discharging his obligation to Lewis, he was acting as between Lewis and Fairfax as Lewis’s agent. When Fitzhugh undertook to procure a conveyance of the whole, he undertook on *41 behalf of Lewis for that part, for which Lewis had received a consideration from Fairfax, and for himself as to the residue. If the contract between Fitzhugh and Lewis, and the latter and Fairfax, and between Fairfax and Fitzhugh, had been distinct, and Lewis had assigned the obligation of Fitzhugh for procuring a conveyance of a part of the land to Lewis, to Fairfax, and Fitzhugh had then contracted to procure a conveyance of the whole to Fair-fax, and had done so ; I should say, without hesitation, that Lewis had performed his covenant, and procured a conveyance of the stipulated portion of the land. He would have procured the conveyance through Fitzhugh, as his agent, or in performance of Fitzhugh’s obligation, it is immaterial which ; as it would, in either case, be done by his procurement. This is the substantial effect; and I think, the just and literal construction of the contract. I cannot think that the three contracts, being made jointly, can receive a different construction from that which they would have received, if made severally.
The proof in the cause is, that Lang did deliver a deed for the 19,200 acres, to the agent of Fairfax: that this was forwarded to Fairfax, and received by him, and it does not appear that he has ever parted with it. It does not appear, that ho ever informed any of the parties interested in the subject, that he was even dissatisfied with it. These facts amount to clear proof that he accepted it; and if not, a jury might have inferred that fact from those circumstances, and the plaintiff being the demurrant, it ought to be presumed. The circumstance of his stating to his agent, not that he rejected the deed, but that he was dissatisfied with it, is entitled to no consideration. Whatsoever title Lang had, is vested in him, and lost to the other parties ; and his acceptance of the deed is prima facie evidence, that the deed was a proper one and passed a good title. The only evidence, after this acceptance of the deed, competent to prove that the defendant had broken his covenant, was, that nothing passed by the deed $ as to which, tha onus *42 probandi lay upon him, and he was not precluded from exhibiting such evidence, by the want of a specification in the plea, of the manner in which the defendant insisted he had performed his covenant ; since there was an averment in the declaration, that Lang had no title, and if there had not been such an averment, such evidence was competent to repel the defence set up by the defendant. Upon the question of title, the plaintiff has exhibited no proof. It is however objected, that the deed had no covenant of general warranty by Lang. The deed was not the less effectual on that account for passing a perfect title, and if it did pass such a title, the covenant was performed; especially as Fairfax accepted an order upon Lang for the deed, which specified minutely the covenants which were required of him, and of which a general warranty was not one. It is said also, that the dower of Mrs. Lang was not relinquished. But that does not appear. What was done, or even a privy examination by magistrates without any commission, may, for aught that can be judicially known .to this Court, have bound the dower rights of Mrs. Lang ; and I have already said, that the acceptance of the deed by Fairfax, was an admission that it was in all respects proper, until the contrary appears; and that the onus probandi rests upon him. He has the deed and does not produce it. The inference which a jury might make, in the absence of all evidence to the contrary, and which therefore the Court is bound to make, is, that the deed was a proper conveyance in form and in effect. If the title or the conveyance had been objectionable, he should have rejected the deed, returned it to Lang, and given notice to the parties concerned. The consequence of his silence is, that the parties have been lulled into security by his conduct, until by the death of Lang, they are disabled from performing their covenants. A conveyance from Lang’s heirs would not be a performance ; and Fairfax would not be bound to accept it, since it might not be so beneficial to him, as a conveyance from Lang. Their covenants might not be as valuable as *43 his, and the land might have descended to them, charged with the payment of the specialty debts of their ancestor.
I have not examined the question discussed at the bar, as to the supposed defect in the declaration, founded upon the idea that Lewis was not bound to procure the conveyance, until hastened by request; a question not now proper for this Court. Those errors, if they exist, might be cured by a verdict, if the issue on the part of the plaintiff was supported ; and at all events, could only be urged upon a motion in arrest of judgment. If the evidence does support the issue on the part of the defendant, then there was no impediment to the final judgment pronounced by the Court below, in favor of the defendant; unless the issue was immaterial ; in which case, a repleader ought to have been awarded. An issue is immaterial, when it is joined upon a point “which does not determine the right of the parties; so that the Court cannot know, for whom to give judgment, whether for the plaintiff or defendant.” In this case it is found, that the defendant did perform all the covenants which he was bound to perform. The plaintiff might, by demurrer, have compelled him to shew how he had performed them ; but having taken issue upon this general plea, and that being found against him, it is a complete bar: For, no matter how he performed his covenants, if it appear that he has performed them. That determines the right in favor of the defendant, and there can be no uncertainty as to the proper judgment.
The evidence set out in the bills of exception, was properly rejected by the Court. The papers mentioned in the first and second exceptions, were the certificates of public officers, of facts appearing, as they say, upon the records of their offices. If those officers had been in Court, and testified on oath to the same facts which they certify, such evidence would have been inadmissible. The plaintiff should have produced duly authenticated and literal copies of the entries upon the records, which they refer to. This would have been better evidence than the statement of any one, *44 as to the effect of those entries. This case presents a strik;ng proof 0f the necessity of adhering to the fundamental rule, that the best evidence which the nature of the case admit of, shall be produced. These two officers, professing to certify as to the same facts, differ in their statements, in circumstances which, in this case, arc perhaps immaterial, yet in other cases might be material. The rejection of the evidence mentioned in the two first exceptions, rendered that mentioned in the third, wholly irrelevant.
■ The evidence mentioned in the fourth and fifth exceptions was so clearly irrelevant, as make it unnecessary to discuss the propriety of rejecting it. As to the sixth exception, the plaintiff cannot complain, as he himself withdrew the evidence, upon an intimation from the Court which was entirely proper.
I think the judgment should be affirmed.
Judge Colter.
These were two cases argued together ; I shall first consider the appeal from the judgment in the suit of Lewis v. Fairfax.
Several objections have been taken to the declaration ; but I think it would be improper for this Court to consider them, even should we decide that the issue on the part of the appellee is not supported by the evidence. The authority cited at the bar, Cort v. Birkbeck, 1 Doug. 218, 225, is conclusive on this point, and is in strict coincidence with the provisions of the act of Assembly constituting this Court. If we reverse, we must enter such judgment as the Court below ought to have entered; which would have been; to declare the law- for the appellant, and award a writ of enquiry.
It would not’ be proper, on a demurrer to evidence, to adjudge the law for the appellant, and then, no verdict being found, as in this case, to adjudge the law for the appellee on the declaration ; because, there being no demurrer in law, a fatal defect in the declaration can only be taken advantage of, by a motion in arrest of judgment, after ver *45 diet. It would be otherwise, had a conditional verdict been found ; which is the usual, and perhaps, the most regular course. Many defect s are cured by verdict; and even if we were of opinion, that the want of an averment of a demand of a conveyance for the Kentucky land, would be fatal, after verdict, yet we cannot consider the case now, as if a verdict had been found, any more than the Court below could. Nor can we say there will be no motion below to amend the pleadings on either side, or that such motion, after demurrer to evidence, would be improper; or that the appellant may not suffer a non-suit, before verdict found ; no point of this kind being before us.
As to the merits : The appellee, after craving oyer, &c. pleads,* that he has well and truly performed all and each of the covenants in the said covenant contained, which, according to the true intent and meaning thereof, he was bound to do and perforin.
I shall throw out of my present consideration of the case, those breaches which relate to the assignments of Lee’s debt and Bull’s mortgage, as I think the issue is supported by the evidence in regard to them. As to the Kentucky land, the plea does not set out the kind of conveyance that was made, or by whom made or procured so as to enable, the Court to judge whether it was or was not, a good performance, or an excuse for non-performance ; but is in general terms as above. Whether this plea would have been sufficient to entitle the appellee to judgment, had there been a verdict for him, or should the Court think the issue tendered thereby, supported by the evidence, or whether, on such a plea, there ought to be judgment for the appellant, notwithstanding a verdict finding the issue against him, or a judgment against him on a demurrer to the evidence, from the view I have taken of the case, 1 am not now called upon to decide. The first question to be considered is, whether the issue, formal or informal, material or immaterial, which is tendered by the plea, is supported by the evidence ; and to decide this, we must first ascertain what the issue, so tendered, is.
*46 There are two modes, by which the appellee could be discharged from the appellant’s action on this covenant, an(l either of which, if properly pleaded and made out by evidence, would be a good bar. First, by procuring a proper conveyance from Lang, for so much of the Green River lands as, at $2 per acre, would discharge #8,333 33, growing due to the appellant under the covenant. Secondly, he would be exonerated from causing a conveyance to be made for part of the tract, provided Fitzhugh should cause a proper conveyance to be made of the whole. He was not bound to wait to see, whether he might possibly be discharged in this latter way, but had a right to procure a conveyance at once, for the part. It might have been, nay, it surely was, his interest to do this promptly ; because, until done, he was in jeopardy. Lang might convey the whole, or a part, to some one-else; he might, therefore, have conveyed a part of the tract, or forfeited a part, and his title have been divested, so that his deed for such part would operate nothing, and convey nothing; and should the appellee rely on a conveyance of the whole, through the medium of Fitzhugh, and that deed operate no conveyance as to part, it might not be a performance of which the appellee could avail himself, although it might convey as much as would amount to the sum aforesaid. For, it at present appears to me, though I give no decided opinion on that point, that he could not avail himself of a conveyance of the whole, unless the deed operated a conveyance of the whole tract. Which of these bars does he mean to set up by the plea, or does he mean both, and can he rely on both, or either at his pleasure ?
If he means the latter, it cannot strictly be called e. performance by the appellee, of that act which he was to do, or cause to be done, to -wit, causing a conveyance to be made of part of the tract; but a discharge from his obr ligation to perform that, in consequence of a conveyance of the whole tract being procured by another. On the other hand, if the plea is to be understood as meaning the *47 performance by the appellee of the act he was hound to perform, unless discharged therefrom by an act done by a third person, then evidence of an act done by such third person, would seem to me not to support the issue tendered,
True, if he had done the identical act which he was bound to do by another, as his agent; in other words, if his agent, had procured Lang to convey the part he was bound to procure him to convey, what he had so done by another would be considered as done by himself; but that is not this case. The evidence only tends to prove, that Fitzhugh, not as his agent, but on his own account, and in , discharge of a substantive agreement by himself, procured a conveyance of the whole, which, if effectual for the whole tract, and such a conveyance of the whole as he was to procure for the part, and was received and accepted, so as to make the deed operate by delivery, or was tendered, and was such a deed as ought to have been accepted under the contract, would exonerate the appellee from causing a conveyance of a part.
I think it would be going too far, under the utmost liberality of practice, admissible in regard to these general pleas, to say that evidence of both or cither of these bars could be admitted under such plea. This liberality ought not to be sanctioned in a way calculated to produce surprise at the trial. It is not enough to say, that possibly in this case there was no such surprise; we must look to what might happen under such a plea.
For instance: the appellant may never have accepted the deed procured by Fitzhugh, so as to make it good by delivery, which I apprehend requires the assent of both parties ; he may have returned it, and given both Fitzhugh and the appellee notice thereof, if indeed he was bound to give the appellee such notice, and the latter may have procured one for a part of the tract, which may, in like manner, have been objected to and returned: now, if, on such a plea as this, in its very terms setting out this performance to have been executed on the part of the appellee himself. *48 he could, on failure to prove that, exhibit proof also of qje deed for the whole, procured by Fitzhugh, the appellant would very naturally be taken by surprise, and might n°l have his witnesses to prove his rejection of that deed.
There are various things that will excuse the non-performance of a covenant, and will be a good bar, if properly pleaded ; but it cannot be contended, as a general proposition, that such things, if given in evidence under the general plea of covenants performed, though not objected to, the party not being obliged to object to impertinent evidence, will support the issue.
The case before us, it appears to me, only differs from general cases of this kind, in this ; that here by a subsequent part of this agreement itself, it appears, that if a certain act is done by a third person, who covenants to do it, and which, as before said, the appellee was not bound to wait for such performance, nor the appellant either, who had a right to call on the appellee at once for the performance on his part, such act, so done, would be an excuse for the non-performance by the appellee. I cannot perceive that such possible excuse, although it arises out of another contract contained in the same paper, exonerates the appellee from pleading it in this case, anymore than in any other. It might have happened, either by a subsequent agreement or otherwise, that Fitzhugh would be exonerated from his agreement to convey the whole, or that the appellant and appellee, having rescinded their agreement, he was to convey the part to the appellee, and the residue only to the appellant, and to which subsequent transaction the concurrence of all the parties was not necessary. This shews, that these contracts were distinct and independent of each other.
The propriety of this opinion may be further tested, by considering what Would have been the notice of a proper plea, relying on this defence. The appellee would have set out the deed as one procured by Fitzhugh for the whole tract, under the second part of the contract, and as excu *49 sing him for not procuring a similar deed for a part. But, if he had failed to prove that plea, could he, under it, have exhibited evidence that he had himself procured a deed for a part, there being no plea to that effect; and would such evidence, though not objected to, support the issue joined ? I think not. These two defences then are of distinct natures, and the question recurs, to which of them does this plea apply ? I think it applies to an act to be. done by the appellee himself and not to an excuse for not doing it; and that there is consequently no proof whatever of the issue on his part.
This relieves me from the necessity of going into the evidence, or of considering what would be the effect of the deed alledged to have been made, without proof of a delivery ; by which I mean, not a mere placing it in the hands of the grantee, but his assent to the delivery ; for, if that was necessary to make it a good deed to pass the title, and that did not take place, then the title remains in the grantor or his heirs. Nor shall I enquire whether, if the title never passed, it was nevertheless such a deed as the appellant ought to have received ; or if not, whether his failure to give notice, either to Fitzhugh or the appellee, would estop him from saying that it was not such a title as he was bound to receive.
I am also relieved from any minute consideration of the exceptions ; though my present impression is, that.the certificates in regard to the forfeiture and sale of the lands for the non-payment of taxes, in the form they were made out, were not proper evidence. Nor do I see the relevancy of the parol testimony mentioned in the last bills of exceptions. The opinion of the Court as to Bull’s contract, stated in one of the bills of exceptions, I think was correct. I have not considered whether the law of Kentucky has been duly authenticated ; possibly it has. But the other testimony being rejected, it became irrelevant. Indeed these bills of exceptions are not before the Court, not being a part *50 °f the record ; nor can they be made siieh, unless by eongentj or by proceeding in the manner prescribed by the act of Assembly.
As to the other case, that of Lewis v. Fairfax ; whatever may be the law of England, growing out of the nature and perplexity of titles there, and of the usage of conveyancers consequent thereon, as to the delivery of abstracts, and the duty of the grantee to prepare the deed, I do not think it applies to this country, or that there is any such usage or practice to support it; but if there was, it is not alledged that any abstract was furnished, so as to enable the appellee to prepare a deed.
On the whole, I think the judgment first mentioned must . be reversed ; the law declared to be for the appellee as to the first two breaches assigned, the issue on his part being supported as to them ; but that the law is for the appellant, as to the third breach, and a writ of enquiry of damages awarded as to that; and that in the other ease, the judgment must be affirmed.
Judge Brooke, concurred with the other Judges, that the judgment in Lewis v. Fairfax, should be affirmed ; and concurred with Judge Co alter, that the judgment in Fairfax v. Lewis, should be reversed and a writ of en- • quiry of damages awarded as to the third breach, but affirmed as to the two first breaches.*

 Judge Cabell absent from indisposition.